## GILBERT v. RIDER.

THIS was an action of trespass, for false imprisonment. The general issue pleaded.

The case was this — The plaintiff was an inhabitant of Mansfield, in the county of Windham; the defendant was an inhabitant, and constable, of Willington, in the county of Hartford: He had in his hands a writ of execution, against the plaintiff and one Marcy (who was also an inhabitant of Willington) for twenty-three shillings, debt and cost. The execution was signed by a justice of the peace, and directed to the constables of Willington and Mansfield. Gilbert being at Willington, the defendant levied the execution on his body; he then tendered to the officer what property he possessed in Willington, which appeared to be probably about the value of the debt; but it was rejected by Rider, as being insufficient.— Gilbert then proposed to go quietly to Hartford goal, if he might be permitted to pass in the post-road, which led through part of the county of Windham, within half a mile of his own house, and was four miles shorter than

any other route: The defendant supposed he had no right to take him out of the county of Hartford; therefore refused to travel the post-road. Gilbert peremptorily refused to go any other way; his obstinacy obliged the officer to bind him, and compel him to go by force;— he used no greater force than was necessary.

Mr. Larrabee, for the plaintiff, made three points:—

1. That the execution could not legally be levied on the body of Gilbert in the town of Willington: That the property of the debtor may be taken wherever it be found; but the person is liable only in the town where he resides. The law requires the officer first to repair to the debtor's place of abode, and there to demand satisfaction of the execution: This could not be done in the present case; for the debtor lived without the jurisdiction of the officer.— The execution was well directed to the defendant, for the purpose of taking the other debtor, Marcy, but did not empower him to take the body of the plaintiff;— therefore, the arrest was illegal.

2. That the officer deviated from his duty, in not going the shortest route to goal.

3. That the tender of property discharged the body, and the defendant was a trespasser, for the subsequent detention.

Mr. Swift, for the defendant, contended — That the justice had power to direct the execution as he did; and it being so directed, the officer was bound to obey: That he appeared to act with an upright intention through the whole transaction, and in no instance used more force than necessarily resulted from the plaintiff's opposition.

As to the 2d point.— It does not appear that the defendant went wantonly out of his road with the plaintiff; he

doubted whether he might legally leave his own county; he therefore pursued the shortest route within it: In this he acted with caution, and a strict regard to duty.

In regard to the 3d point.— Although the property offered might have been near the value of the debt, yet there was not the remotest probability that it could possibly have raised that sum when sold at the post: The officer was not bound to take estate when tendered, unless there was a reasonable prospect, that being disposed of according to law, it would produce a sum sufficient to discharge the debt;— he is not required to take any hazard upon himself.

The jury found a verdict for the plaintiff;— on which the court delivered the following opinions: —

LAW, C. J., SHERMAN, PITKIN, and ELLSWORTH, JJ., agreed — That a justice of the peace has, by law, a right to issue his execution through the state, if he finds it necessary to give it effect; and it is at his discretion. Should it appear that an execution was directed to a distant officer, merely to vex and oppress the debtor, it might subject the authority who issued it to damages; but the officer is bound by his precept, unless it be void on the face of it; — he cannot look to the circumstances which induced the direction.

As to the property tendered —.it was not apparently sufficient to discharge the debt and incidental cost; the officer was not, therefore, bound to receive it. It is undoubtedly the duty of an officer, after having taken the body, to allow the debtor a reasonable opportunity to produce estate, which appears to have been done in the present case.

As to the road — the officer is not always bound to take the most direct road to prison; he may apprehend a rescue, and it is at his discretion what route to take, so that he does not go a great way round about, in order to harass and oppress the debtor. Here the deviation was small (if any) and reasonably accounted for.

DYER, J., dissenting. The taking of the body does not discharge the debt, even if the debtor dies in goal; but by the imprisonment, the law has only in contemplation to compel the debtor to do justice to his creditor so far as he is capable. All laws which affect the liberty of the subject, ought to receive the most humane and liberal construction. Let us, then, examine the circumstances of the present case, and compare these principles, which cannot be controverted:— Here was an execution for the trifling sum of twenty-three shillings. (If it had been to a very great amount, where the creditor was in hazard of losing everything, the reason and nature of the case would be different.) This execution is given to an officer in a different town and county from the debtor's residence, by which he is taken on the first notice absent from home. What does he do? He delivers to the officer all the property he has in that situation. This was, probably, enough to have discharged the debt, but it does not liberate him; he is compelled to go: — Here it is said the officer must run no hazard.— I answer, he must act reasonably; in the present case he would have been perfectly safe, to have accepted the estate offered; he could not determine with certainty, that the value of £20, in property, would produce twenty shillings, when disposed of at auction, as the law directs; therefore, he must be governed by the reason-

able appearance.    That would have justified him in this case.

Mr. Swift, then moved in arrest of judgment; because one of the jurors who tried the cause had not taken the oath of fidelity to this state; which fact was unknown to the defendant at the time of trial.

He supposed the office of juror within the statute, which enacts — " That all members of the general assembly, and all officers, civil and military, and freemen of this state, shall take the oath of fidelity to this state, prescribed by law: And that no person shall execute any office, civil or military, nor vote in any town, society, or other public meeting appointed by law, nor plead in any court (except in his own case) nor shall any male person act as executor or administrator, or guardian to any minor, until he shall have taken the oath aforesaid."

From the general and particular terms of the statute, he urged — That the legislature must have intended to include jurors; and that such qualification being required by law, no verdict can be good where it is wanting.    But,

By the whole Court.    If to sit as a juror, is to execute an office, within the meaning of the statute (which we apprehend not to be the case) yet as the juror was not challenged, though the fact might have been known by inquiry of him, or otherwise, the exception being then waived, it comes too late after verdict.    The exception does not go to the partiality of the juror, nor affect the obligation he was under to find a verdict according to truth; and it is not stronger than the want of a freehold, which, though a ground of challenge, hath been repeatedly adjudged insufficient after verdict.